IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-00969-MSK-KMT

TERRY BLEVINS,

        Plaintiff,

v.

LARRY REID, Warden, CSP,
JUDY LINDSEY, Initiating Employee, and
CATHY SLACK, Administrative Head/Director,
TOM MISEL, Chairperson Ad Seg Hearing,
LT. BARR, Gang Coordinator,
JOHN DOE, Offender Services,
MR. DAVIDSON, Mental Health
MR. MARTINEZ, Committee Chairperson, Pro-Unit Hearing,
MS. GAIL, Programs Mgr. Pro-Unit, and
JANE DOE, Unknown,

        Defendants.

---

## ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTIONS TO DISMISS

---

      THIS MATTER comes before the Court on several motions to dismiss **(#80, #107, #113)** and supporting briefs **(#81, #114)** filed by Defendants Reid, Lindsey, Slack, Misel, Barr and Martinez, to which the Plaintiff responded **(#92, #108, #109, #122)** and Defendants Reid and Lindsey replied **(#96)**.[1] Having considered the same, the Court

---

[1] Mr. Davidson and Ms. Gail filed no such motions. For purposes of the instant motions, only, the Court will refer to each Defendant by name where practicable, but will otherwise refer to the Defendants who filed motions using the collective term "Defendants."

**FINDS** and **CONCLUDES** that:

## I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## II. Background

The Plaintiff, Terry Blevins, appears *pro se*. Although the Court does not serve as his advocate, it construes all of his filings liberally in accordance with *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

In his "Second Amended Prisoner Complaint" **(#99)**,[2] Mr. Blevins asserts claims against various employees of the Colorado Department of Corrections ("CDOC") under 42 U.S.C. § 1983. He complains, primarily, of his reassignment to administrative segregation, his treatment thereafter, and his resulting loss of personal property. He sues the Defendants in both their official and individual capacities, and seeks monetary and injunctive relief.

The following are pertinent factual allegations in the Third Amended Complaint:

Mr. Blevins has been housed in administrative segregation for 3 ½ years. He was first assigned to administrative segregation in January 2004 while he was housed at the Buena Vista Correctional Facility. In June 2004, he was moved to a private prison in Mississippi, and CDOC put all of his personal property into storage. While Mr. Blevins was in Mississippi, CDOC lowered his custody level – which resulted in Mr. Blevins accruing earned time – without giving Mr. Blevins any notice. On June 28, 2005, he returned to Colorado and was assigned to the Colorado State Penitentiary, an administrative segregation facility.

---

[2] In actuality, it is a third amended complaint. For clarity, the Court will refer to it as his "Third Amended Complaint."

On July 7, 2005, Mr. Blevins was given an administrative segregation hearing prior to official reassignment. Ms. Lindsey, Ms. Slack and Mr. Misel participated in that hearing. The result of that hearing was that Mr. Blevins was reassigned to administrative segregation, based upon the finding that he was associated with a security threat group. Mr. Reid affirmed the decision to reassign Mr. Blevins to administrative segregation.

In October 2005, Mr. Reid held a "warden review hearing" and refused to remove Mr. Blevins from administrative segregation into the general population or a diversion unit due to poor attitude. Mr. Blevins received no notice of this hearing and believes that an additional, secret warden review hearing occurred in either December 2006 or January 2007. It was purportedly conducted by Mr. Reid and Mr. Martinez. At that hearing, Mr. Martinez opined that Mr. Blevins did not belong in administrative segregation, but Mr. Reid opined that Mr. Blevins needed to progress through the pro-unit. Mr. Blevins did not receive notice of this hearing or its results.

A "pro-unit hearing" was held in December 2006.[3] At that hearing, Mr. Barr voted not to allow Mr. Blevins to move into the pro-unit. Another pro-unit hearing occurred in July 2007. This time, Mr. Blevins was approved for placement into the pro-unit by a 5-4 vote, and was told to write two essays. He wrote both essays, but was then told to write a third essay because "they" did not like the first two.

In August 2007, Mr. Blevins was told he had to attend a pro-unit meeting right away. In attendance were Mr. Barr, Mr. Martinez, Mr. Davidson, Ms. Gail, John Doe, and Jane Doe, all of

---

[3] Mr. Blevins also makes reference to a diversion unit in his pleading, but it is not clear from his allegations whether there is any distinction between the diversion unit and the pro-unit.

whom knew that Mr. Blevins had commenced a lawsuit involving the CDOC. At that hearing, Mr. Blevins was informed that the committee members had voted not to move him to the pro-unit, that one of his essays was inappropriate, and that he should consider himself a permanent resident of the Colorado State Penitentiary. Mr. Blevins was not given an opportunity to defend himself.

Due to his assignment to administrative segregation, Mr. Blevins was required to mail his personal property out of the prison or have it confiscated. Ultimately, his property was taken from him. Due to his continued assignment to the Colorado State Penitentiary, he has become effectively ineligible for parole.

Mr. Blevins asserts five enumerated claims that essentially repeat the factual allegations. Construing these allegations as liberally as possible, the Court discerns twelve possible claims:

**Claim 1:** Mr. Blevins' right to procedural due process was violated when his custody level was favorably reduced while he was in Mississippi, but he was given no notice.

**Claim 2:** Ms. Lindsey, Ms. Slack and Mr. Misel violated Mr. Blevins' procedural due process rights when they assigned him to administrative segregation in June 2005, because they did not tell him during his administrative segregation hearing that he would lose his property.

**Claim 3:** Mr. Blevins' procedural due process rights were violated because he was forced to either donate, destroy or send home his property as a consequence of his assignment to administrative segregation, and without a hearing to address disposal of his property.

**Claim 4:** Mr. Reid, Ms. Lindsey, Ms. Slack, and Mr. Misel violated Mr. Blevins' right to procedural due process when they reassigned him to administrative segregation in June 2005, due to his erroneous classification as a member of a security threat group.

**Claim 5:** During October 2005, Mr. Blevins' right to procedural due process

was violated when Mr. Reid conducted a warden review hearing without advance notice, considered Mr. Blevins' attitude in determining whether to remove him from administrative segregation, and failed to advise Mr. Blevins in writing of the outcome of the review.

**Claim 6:** Mr. Reid and Mr. Martinez violated Mr. Blevins' right to procedural due process when they did not notify him of a second warden review hearing which occurred in December 2006 or January 2007, nor of the resulting decision.

**Claim 7:** Mr. Barr, Mr. Martinez, Mr. Davidson, Ms. Gail, John Doe and Jane Doe violated Mr. Blevins' right to procedural due process because they did not give him advance notification of the July 2007 pro-unit review hearing.

**Claim 8:** Mr. Barr, John Doe, Mr. Davidson, Mr. Martinez, Ms. Gail, and Jane Doe violated Mr. Blevins' right to procedural due process because their August 2007 decision to revoke his assignment to the pro-unit was based upon what he wrote in his essays, and he was not given an opportunity to defend his essays at the hearing.

**Claim 9:** Mr. Blevins' right to be free from double jeopardy was violated when Mr. Reid, Ms. Lindsey, Ms. Slack, and Mr. Misel reassigned him to administrative segregation in June 2005.

**Claim 10:** Mr. Reid retaliated against Mr. Blevins when Mr. Reid declined to approve him for reassignment to the general population or into the diversion unit in October 2005.

**Claim 11:** During a pro-unit review hearing in December 2006, Mr. Barr and Mr. Martinez decided not to move Mr. Blevins to the pro-unit because he was suing Mr. Reid over his placement.

**Claim 12:** The August 2007 decision to deny Mr. Blevins a transfer into the pro-review unit, and to keep him at the Colorado State Penitentiary, was in retaliation for a lawsuit he had commenced against Mr. Reid over his placement, and in retaliation for his exercise of free speech due to the contents of the essays he had written.

On these claims, Mr. Blevins seeks to recover: (1) $100 per day for time spent in

administrative segregation; (2) $1,500 for lost property; (3) amendment of the administrative regulations governing inmate property; (4) imposition of a requirement that inmates be advised about property issues during administrative segregation hearings; (5) an injunction requiring CDOC to allow inmates to possess property and buy canteen items while in administrative segregation unless there is a legitimate security issue; (6) expungement of the second administrative segregation determination from his record; and (7) an apology.

### III. Issues and Standard of Review

The Defendants move to dismiss some of the claims pursuant to Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) motions generally take one of two forms. *See Stuart v. Colorado Interstate Gas Co.,* 271 F.3d 1221, 1225 (10th Cir. 2001). The moving party may either facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests. *See Maestas v. Lujan,* 351 F.3d 1001, 1013 (10th Cir. 2003). Here, the jurisdictional challenge is a facial one, which takes the form of a claim to Eleventh Amendment immunity.

The Defendants also move to dismiss claims pursuant to Fed. R. Civ. P. 12(b)(6). Under this rule, a party may move to dismiss a claim for relief on the basis that it fails to state any claims upon which relief may be granted. There is a strong presumption against the dismissal of claims under this rule. *See Cottrell, Ltd. v. Biotrol Intern., Inc.,* 191 F.3d 1248, 1251 (10th Cir. 1999). The Court accepts all well-pleaded allegations in a complaint as true and construes them in the light most favorable to the plaintiff. *See Williams v. Meese,* 926 F.2d 994, 997 (10th Cir. 1991). A plaintiff is not required to include detailed factual allegations in a complaint, but a complaint

must contain "more than labels and conclusions" and must consist of more than "a formulaic recitation of the cause of action[.]"  *See Bell Atlantic Corp. v. Twombly*, _ U.S. _, 127 S. Ct. 1955, 1964-65 (2007).  Rather, it must contain factual allegations which are "enough to raise a right to relief above the speculative level[.]" *Id.*

## IV.  Analysis

### A.  Eleventh Amendment Immunity

All Defendants argue that they are entitled to Eleventh Amendment immunity to the extent that they are sued in their official capacities.  Mr. Blevins responds that the Defendants are not entitled to immunity.  The basis for his argument is not entirely clear, but it appears that he believes that the Defendants are not entitled to immunity because they deliberately ignored his rights.

The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  This Amendment shields state officials, acting in their official capacities, from claims for monetary relief.  *See Hill v. Kemp,* 478 F.3d 1236, 1255-56 (10th Cir. 2007), *cert. denied*, 128 S. Ct. 873, 128 S. Ct. 884 (U.S. Jan. 7, 2008).  However, a claim for injunctive relief may, in some circumstances, proceed against such official in his or her official capacity.  *Id.*  Whether the Eleventh Amendment provides immunity on a claim for injunctive relief depends upon whether the relief sought is truly prospective.  *Id.* at 1258-59.  If the relief sought is actually retrospective, then the Eleventh Amendment bars it.  *Id.*

To the extent that monetary relief is sought from the Defendants in their official

capacities, the Eleventh Amendment shields them from liability.  However, to the extent that Mr. Blevins seeks prospective, injunctive relief in this action, including, for an example, an order directing the CDOC to expunge from his record the July 2005 determination to assign him to administrative segregation, the Eleventh Amendment does not bar such claims.

**B.  Statutory Bar on Compensatory Damages**

The Defendants contend that Mr. Blevins is barred from recovering compensatory relief because he did not allege a physical injury under 42 U.S.C. § 1997e(e).  In response, Mr. Blevins states his belief that he has suffered a physical injury because he has lost earned time credits while in administrative segregation, and this has caused him to remain incarcerated for a longer period of time.

Under 42 U.S.C. § 1997e(e), a prisoner cannot recover compensatory relief "for mental or emotional injury suffered while in custody without a prior showing of physical injury."  The statute does not define "physical injury," but to give the term meaning within its context – in which a distinction is drawn between "physical" and "mental/emotional" injuries – it necessarily requires that there be an injury to the inmate's body in order for the inmate to recover compensatory damages.[4]  However, even absent a physical injury, a prisoner can recover punitive and nominal damages.  *Cf. Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001).

In this action, Mr. Blevins has not alleged any physical injury.  Thus, he is barred from recovering compensatory relief in this action.  However, in his Third Amended Complaint, Mr. Blevins seeks monetary relief but has not differentiated whether he seeks such relief as

---

[4] The Merriam-Webster Dictionary (10th Ed.) offers several definitions of "physical," but the one most pertinent to this context is "of or relating to the body."

compensation for his loss, or as punitive damages. He has referred to a request for punitive damages in both responses to the motions to dismiss. Thus, his request for punitive damages is not barred.

## C. Claims Under the Colorado Constitution

The Defendants move to dismiss any claims asserted by Mr. Blevins in which he alleges a violation of the Colorado Constitution on the basis that any such violation would not give rise to a claim under 42 U.S.C. § 1983. Mr. Blevins has not responded to this argument, although he refers to Colorado law as forming the basis of some of his due process claims, which the Court addresses *infra*.

The Court has not discerned any claims which are premised solely upon Colorado law, although there are sporadic references in the Third Amended Complaint to Colorado law. To the extent that Mr. Blevins seeks to assert § 1983 claims which are premised upon alleged violations of Colorado law, such claims are not cognizable and are dismissed. *See Jones v. City and County of Denver, Colo.*, 854 F.2d 1206, 1209 (10th Cir. 1988).

## D. Claims 1 through 8: Due Process Claims

Most of Mr. Blevins' claims allege the denial of procedural due process.[5] To state a claim for the denial of procedural due process, Mr. Blevins must allege: (1) that he was deprived of a liberty or property interest; (2) without constitutionally adequate process. *See Board of Regents v. Roth*, 408 U.S. 564, 569-70 (1972).

As to these claims, the Defendants argue that Mr. Blevins has failed to state any due

---

[5] He specifically alleges a denial of procedural due process, as opposed to substantive due process. This is also evident in his responses to the motions to dismiss, which focus upon the alleged absence of adequate procedural safeguards.

process claim because he has not identified any liberty or property interest protected by the Due Process Clause. Mr. Blevins responds that he has alleged facts to support both types of interests.

In the context of prisoner litigation, the assessment of whether there is a liberty interest merits special discussion. The United States Supreme Court has long recognized that the Due Process Clause does not, of its own force, confer a liberty interest upon prisoners to be free from conditions of confinement which are within the sentence imposed. *Montanye v. Haymes,* 427 U.S. 236, 242 (1976). Prior to 1995, the existence and scope of an inmate's liberty interest, and therefore whether there was a due process violation, was determined by the language of the applicable regulations. However, in *Sandin v. Conner*, 515 U.S. 472, 477-84 (1995), the United States Supreme Court eschewed the old method of examining prison regulations to determine whether there was an entitlement, and ruled that the determination of whether an inmate had a liberty interest that gave rise to due process protection required that the inmate suffer an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life[.]" *Id.* at 484. Thus, the focus is now upon the conditions of the inmate's confinement, rather than upon any regulatory procedures.[6]

In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court considered whether inmates had a liberty interest to avoid placement in Ohio's Supermax facility and whether the procedures adopted by the State of Ohio for classifying and placing inmates into a "Supermax" prison provided constitutionally adequate process. Guided by *Sandin*, the Supreme Court considered the totality of the conditions at Supermax to determine whether they imposed an

---

[6] Many of Mr. Blevins' claims are based upon his belief that prison regulations create a liberty interest. Before the Supreme Court's opinion *Sandin*, he might have been correct, but after *Sandin*, the analysis is completely different.

atypical and significant hardship.[7]  It found that such conditions, viewed together, amounted to a sufficiently atypical and significant hardship such that there was a protected liberty interest subject to due process protection.  It also approved (but did not specifically prescribe) the pre-deprivation process offered by the State of Ohio – (1) the inmate receives notice of the factual basis for assignment to Supermax, (2) the inmate receives a fair opportunity to rebut such factual basis, (3) the inmate can submit objections to such assignment prior to the final level of review, (4) the inmate receives a short statement of reasons for the assignment, and (5) there is a placement review within 30 days after initial assignment to Supermax.

Thus, what is clear from *Sandin* and *Wilkinson* is that if assignment to administrative segregation presents "atypical and significant hardship in relation to the ordinary incidents of prison life," then there is a liberty interest which requires some due process.  With this overarching principle in mind, the Court turns to each of Mr. Blevins' claims that he was denied procedural due process.

### 1. Claim 1: Reduction of Custody Level Without Notice

In Claim 1, Mr. Blevins claims that his right to due process was violated when his custody level was favorably reduced while he was in Mississippi, but he was given no notice.  These allegations do not state a claim for denial of procedural due process, because the favorable reduction of his custody level was not a deprivation of either a property or a liberty interest.

_____

[7] The conditions were: (1) all human contact was prohibited, including conversations between inmates in neighboring cells; (2) the lights were on 24 hours per day, and if an inmate attempted to shield the light, he could be disciplined; (3) inmates could exercise 1 hour per day in a small indoor room, but were confined to their 7 feet by 14 feet cells for the remaining 23 hours; (4) assignment to Supermax was indefinite (except as limited by the term of imprisonment) with only annual reviews as to the propriety of placement; and (5) inmates otherwise eligible for parole were disqualified.

Thus, Claim 1 is dismissed.[8]

**2. Claim 2: Assignment to Administrative Segregation in June 2005**

In Claim 2, Mr. Blevins claims that Ms. Lindsey, Ms. Slack and Mr. Misel violated his due process rights when they assigned him to administrative segregation in June 2005, because they did not tell him during his administrative segregation hearing that he would lose his property.[9] The Defendants argue that because there is no right to possess property while incarcerated, and because Mr. Blevins was given the opportunity to mail his property out of the prison, Mr. Blevins has not stated a claim for relief.

This claim actually presents the question of whether an inmate must be advised in an administrative segregation hearing that the loss of property is a consequence of placement in administrative segregation. For two reasons, the Court concludes that no such advisement is necessary. First, the Defendants are correct that inmates do not have a right to possess personal property while incarcerated, and they can be required to ship their property outside of the prison. *See Searcy v. Simmons,* 299 F.3d 1220, 1229 (10th Cir. 2002); *see also Williams v. Meese,* 926 F.2d 994, 998 (10th Cir. 1991). Second, if there is a right to due process which attaches to an assignment to administrative segregation, then it would not need to encompass notice to the inmate of all consequences of such placement. It might require notice of the factual basis for assignment to administrative segregation, an opportunity to object to such assignment, and a right

---

[8] This claim also must be dismissed because it does not allege any conduct by any Defendant named in this action.

[9] He also alleges he was denied a similar advisement while housed at the Buena Vista Correctional Facility ("BVCF") in 2004, but there are no claims asserted against any BVCF employees in this case.

to a statement of reasons for the decision. *See Wilkinson*, 545 U.S. at 224-230. However, the incidental consequences of the ultimate decision do not need to be the subject of an advisement. Thus, Claim 2 is dismissed.

### 3. Claim 3: Loss of Property in June 2005

In Claim 3, Mr. Blevins claims that his due process rights were violated because he was forced to either donate, destroy or send home his property as a consequence of his assignment to administrative segregation, and without a hearing to address disposal of his property.[10] The Defendants respond that Mr. Blevins has no right to possess property while in prison. As discussed *supra*, there is no deprivation of a property interest when an inmate is required to either send his property outside of prison or have it confiscated. *See Searcy,* 299 F.3d at 1229. Therefore, Claim 3 is dismissed.

### 4. Claim 4: Assignment to Administrative Segregation in June 2005 due to Erroneous Classification

In Claim 4, Mr. Blevins alleges that Mr. Reid, Ms. Lindsey, Ms. Slack, and Mr. Misel violated his right to due process when they reassigned him to administrative segregation in June 2005, due to his erroneous classification as a member of a security threat group ("STG").

For purposes of this claim, the Court assumes that Mr. Blevins had a liberty interest to avoid placement in administrative segregation, and that he was entitled to the minimal due process approved by the Supreme Court in *Wilkinson*.[11] Here, Mr. Blevins alleges that he received a hearing prior to finalization of his assignment to administrative segregation, for which

---

[10] It is unclear against whom this claim is asserted.

[11] For purposes of the instant motions, the Defendants make this assumption as well, stating that Mr. Blevins "may have a liberty interest in avoiding assignment to" the Colorado State Penitentiary.

he received advance notice, an opportunity to be heard in opposition, and an opportunity to appeal. Such procedure would appear to satisfy due process.

However, what Mr. Blevins actually appears to challenge is the factual basis for the determination to assign him to administrative segregation, *i.e.*, that it was erroneous to classify him as a member of an STG because there was no evidence to support such classification. The Defendants have not addressed whether such a challenge falls within the purview of the Due Process Clause. Arguably, it might, because it was the STG classification which allegedly resulted in Mr. Blevins' assignment to administrative segregation. In another context, the Tenth Circuit stated that the Due Process Clause requires that there be "some evidence" to support a prison official's classification decision where a liberty interest was at stake. *See Gwinn v. Awmiller*, 354 F.3d 1211, 1219 (10th Cir. 2004) (sex offender classification) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)). For pleading purposes, Mr. Blevins has stated a claim for relief in Claim 4.

### 5. Claims 5 and 6: Warden Review Hearings

In Claim 5, Mr. Blevins claims that during October 2005, his right to due process was violated when Mr. Reid conducted a warden review hearing without advance notice, considered Mr. Blevins' attitude in determining whether to remove him from administrative segregation, and failed to advise Mr. Blevins in writing of the outcome of the review. In Claim 6, he alleges that Mr. Reid and Mr. Martinez violated his right to due process when they did not notify him of a second warden review hearing which occurred in December 2006 or January 2007, nor of the resulting decision. As to these claims, the Defendants argue that the warden review hearings were not constitutionally required, and that the informal review of Mr. Blevins' assignment to

14

administrative segregation did not create any rights.

Although the Supreme Court in *Wilkinson* addressed what process was due to an inmate prior to assignment to Supermax, it did not address what process is due to an inmate after such assignment. Rather, the issue of post-deprivation process was addressed, pre-*Sandin,* in *dicta* by the Supreme Court in *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983), where it noted that confinement to administrative segregation requires "some sort of periodic review", but that such review would not necessarily require prison officials to permit submission of evidence or statements. The Tenth Circuit has not addressed what satisfies this standard. However, appellate courts from around the country generally agree that "some sort of periodic review" is required by *Hewitt*, even after *Sandin. See, e.g., McClary v. Kelly,* 237 F.3d 185, 186 (2d Cir. 2001); *see also Alston v. DeBruyn,* 13 F.3d 1036, 1042 (7th Cir. 1994).

In light of the absence of clarity as to what process Mr. Blevins was entitled to receive after assignment to administrative segregation, the Court cannot conclude that he has failed to state a due process claim premised upon the warden review hearings. Thus, the request to dismiss Claims 5 and 6 is denied at this juncture.

### 6. Claim 7: July 2007 Pro-Unit Review Hearing

In Claim 7, Mr. Blevins alleges that Mr. Barr, Mr. Martinez, Mr. Davidson, Ms. Gail, John Doe and Jane Doe violated his right to due process because they did not give him advance notification of the July 2007 pro-unit review hearing. The Defendants respond that he had no liberty interest in being transferred into the pro-unit, thus no process of any kind was required. They further contend that even if there had been a liberty interest, adequate procedures were used.

At the pleading stage, it is not clear whether the pro-unit review hearing was part of the

"some sort of periodic review" envisioned by the Supreme Court in *Hewitt,* and if so, whether it required any particular process. Thus, the request to dismiss Claim 7 is denied at this juncture.

### 7. Claim 8: August 2007 Revocation of Pro-Unit Assignment

In Claim 8, Mr. Blevins alleges that Mr. Barr, John Doe, Mr. Davidson, Mr. Martinez, Ms. Gail, and Jane Doe violated his right to due process because their August 2007 decision to revoke his assignment to the pro-unit was based upon what he wrote in his essays, and he was not given an opportunity to defend his essays at the hearing. The Defendants respond that revocation of his assignment to the pro-unit was proper due to the inappropriate content of the essays he wrote.

The issue, however, is not whether it was proper to revoke Mr. Blevins' assignment to the pro-unit. Rather, it is whether this was tantamount to another new assignment to administrative segregation, and if so, whether it required any particular procedural safeguards such as those approved by the Supreme Court in *Wilkinson*. To the extent this is what Mr. Blevins claims, he has stated a due process claim, and the request to dismiss Claim 8 is denied.

### E. Claim 9: Double Jeopardy Claim

In Claim 9, Mr. Blevins alleges that his right to be free from double jeopardy was violated when Mr. Reid, Ms. Lindsey, Ms. Slack, and Mr. Misel reassigned him to administrative segregation in June 2005. The Defendants move to dismiss this claim on the basis that assignment to administrative segregation is not "punishment" which falls within the purview of the Double Jeopardy Clause. Mr. Blevins responds that such assignment is punishment, because it results in a loss of earned time credits.

The Double Jeopardy Clause protects a criminal defendant from "(1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after

conviction, and (3) multiple punishments for the same offense." *See Anderson v. Mullin,* 327

F.3d 1148, 1153 (10th Cir. 2003).   Within the context of this case, the first two protections –

from a second prosecution – have no application because the decision to assign an inmate to

administrative segregation is not a criminal prosecution. *Fogle v. Pierson,* 435 F.3d 1252, 1261-

62 (10th Cir. 2006).  As for the third protection, it does not apply because assignment to

administrative segregation does not constitute "punishment" for purposes of the Double Jeopardy

Clause.  *Id.*  Thus, Claim 9 is dismissed.

**F.  Claims 10 through 12: Retaliation Claims**

Mr. Blevins asserts three possible claims of retaliation.  All three claims pertain to

decisions not to give him a particular housing assignment, *i.e.*, not to assign him to the general

population, to the diversion unit or to the pro-unit.  Two of the claims allege that the decisions

were based upon the fact that Mr. Blevins had commenced a lawsuit.  As to all three claims, the

Defendants contend that Mr. Blevins has failed to state a claim. Mr. Blevins responds that he has

alleged sufficient facts to support the retaliation claims.

To state a claim for retaliation, Mr. Blevins must allege that: (1) he engaged in

constitutionally protected activity;  (2) the Defendants took some action which caused Mr.

Blevins to suffer an injury that would chill a person of ordinary firmness from continuing to

engage in that activity; and (3) the action was substantially motivated as a response to Mr.

Blevins' exercise of constitutionally protected conduct.  *Shero v. City of Grove, Okl.,* 510 F.3d

1196, 1203 (10th Cir. 2007).

### 1. Claim 10: October 2005 Decision not to Place Mr. Blevins in the General Population or Diversion Unit

In Claim 10, Mr. Blevins alleges that Mr. Reid retaliated against him when Mr. Reid declined to approve him for reassignment to the general population or into the diversion unit in October 2005. However, Mr. Blevins does not allege that he engaged in constitutionally protected activity nor that Mr. Reid's decision was motivated by it. Thus, Claim 10 is dismissed.

### 2. Claim 11: December 2006 Decision not to Place Mr. Blevins in the Pro-Unit

In Claim 11, Mr. Blevins alleges that during a pro-unit review hearing in December 2006, Mr. Barr and Mr. Martinez decided not to move him to the pro-unit because he was suing Mr. Reid over his placement. Such allegations are sufficient to state a claim for retaliation. His pursuit of legal claims was an exercise of his constitutional rights. *See Smith v. Maschner*, 899 F.2d 940, 947-48 (10th Cir. 1990). He contends that Mr. Barr and Mr. Martinez made their unfavorable decision based upon such exercise of constitutional rights. Such decision could chill a person of ordinary firmness from seeking legal relief from the courts. The request to dismiss this claim is denied.

### 3. Claim 12: August 2007 Decision not to Place Mr. Blevins in the Pro-Unit

In Claim 12, Mr. Blevins alleges that the August 2007 decision to deny him a transfer into the pro-review unit, and to keep him at the Colorado State Penitentiary, was in retaliation for a lawsuit he had commenced against Mr. Reid over his placement, and in retaliation for his exercise of free speech due to the contents of the essays he had written.[12] Such allegations are sufficient to

---

[12] The Defendants have interpreted this claim as a straightforward First Amendment free speech claim, but the Court does not see it as such. Mr. Blevins only claims that retaliatory actions were taken against him because of his speech, not that there was any prior restraint on his speech nor that he was disciplined for the content of his speech.

state a claim for retaliation, therefore this claim, against Mr. Barr, John Doe, Mr. Davidson, Mr. Martinez, Ms. Gail, and Jane Doe is not dismissed.

## G. Qualified Immunity

The Defendants claim that they are entitled to qualified immunity to the extent that Mr. Blevins seeks monetary relief. Mr. Blevins contends otherwise. As discussed *supra*, the only monetary relief which Mr. Blevins might recover in this action might be punitive damages against the Defendants in their individual capacities.

Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity also offers protection from trial and other burdens of litigation. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *see also Jones v. Hunt*, 410 F.3d 1221, 1225 (10th Cir. 2005). The doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *See Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Determination of whether a defendant is entitled to qualified immunity in the context of a motion under Fed. R. Civ. P. 12(b)(6) involves a 2-pronged inquiry. A court first determines whether a plaintiff pled a constitutional violation in his complaint. *See Denver Justice and Peace Committee, Inc. v. City of Golden,* 405 F.3d 923, 928 (10th Cir. 2005). As discussed *supra*, Mr. Blevins has done so here, but only with regard to Claims 4, 5, 6, 7, 8, 11, and 12.

Then a court determines whether the constitutional right was clearly established at the time of the allegedly unlawful conduct. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001)*; Reynolds*

19

*v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). This latter inquiry is made in light of the specific context of the case, not as a broad general proposition. *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier*). Whether the law was clearly established is essentially a legal question and is measured by an objective standard. *See Crawford-El v. Britton,* 523 U.S. 574, 589-90 (1998).

Although there need not be a factually identical case to demonstrate that the constitutional right was clearly established, there must be a Supreme Court or Tenth Circuit opinion on point, or the right must be supported by the weight of sufficiently analogous authority from other courts. *See Martinez v. Carr,* 479 F.3d 1292, 1295 (10th Cir. 2007). In other words, there must be caselaw in which a constitutional violation was found based upon similar conduct. *See Callahan v. Millard County,* 494 F.3d 891, 903 (10th Cir. 2007), *petition for cert. granted*, 76 U.S.L.W. 3316 (Mar. 24, 2008) (No. 07-751).[13]

### 1. Due Process Claims

#### Insufficient Evidence for STG Classification

In Claim 4, Mr. Blevins claims a denial of due process on the basis that there was insufficient evidence to support his STG classification. While he arguably states a claim for the denial of due process, as discussed *supra*, Mr. Blevins presents no caselaw and the Court has found none that clearly places any restraints on Colorado prison staff in choosing to classify an inmate as a member of an STG.

At best, the Court can extrapolate from other contexts and apply the "some evidence"

---

[13] In *Callahan*, among the issues the parties will address on appeal is whether the decision in *Saucier v. Katz,* 533 U. S. 194 (2001) should be overruled. The other issues presented on appeal are not pertinent to the instant case.

standard enunciated by the Supreme Court in *Wolff* and reiterated by the Tenth Circuit in *Gwinn*. Neither of those cases involved an inmate's assignment to administrative segregation. There appears to have been no clearly applicable standard precluding the conduct complained of, here. As a consequence, the Defendants are entitled to qualified immunity on Claim 4.

### Warden Review Hearings

In Claims 5 and 6, Mr. Blevins contends that he was denied due process during two warden review hearings where he was denied advance notice of the hearings, was denied a statement of the outcome, and his attitude was a factor considered during the first hearing. This arguably states a due process claim, as discussed *supra*, but again Mr. Blevins points to no caselaw or other authority and the Court has found none that specified any particular process which Mr. Blevins should have been, but was not, afforded. The phraseology from *Hewitt* – that there must be "some sort of periodic review" – is oblique and does not clearly establish anything except, perhaps, a right to so-called periodic reviews. There is no law of which this Court is aware that would have placed the Defendants on notice that the procedures used to conduct the warden reviews were constitutionally inadequate in any way. Thus, the Defendants are also entitled to qualified immunity on Claims 5 and 6.

### July 2007 Pro-Unit Review Hearing

In Claim 7, Mr. Blevins claims a violation of his right to due process with regard to his July 2007 pro-unit review hearing. As discussed earlier, this claim states a claim for relief if the hearing was part of the "periodic review" contemplated in *Hewitt*. But again, Mr. Blevins has not pointed to any law, nor has the Court has found any law, which clearly established any right to any particular process during such a hearing. Therefore, the Defendants are entitled to qualified

immunity on Claim 7.

### August 2007 Revocation of Pro-Unit Assignment

In Claim 8, Mr. Blevins claims that he was denied procedural due process when his assignment to the pro-unit was revoked in August 2007. As stated *supra*, it is unclear whether Mr. Blevins claims that such revocation equated to assignment to administrative segregation and required procedural protections such as those approved in *Wilkinson*. Assuming that this is, indeed, his claim, the Court cannot conclude that the Defendants are entitled to qualified immunity in light of the *Wilkinson* decision at the pleading stage. There may be factual distinctions between *Wilkinson* and the case at bar which render *Wilkinson* inapposite, but such distinctions cannot be reconciled in the context of a motion filed under Fed. R. Civ. P. 12(b)(6).

**2. Retaliation Claims**

At the time of the alleged retaliation, it was clearly established that it violates a prisoner's constitutional rights to retaliate against him for filing a lawsuit. *See Smith,* 899 F.2d at 947-48. Thus, at this juncture, the Defendants are not entitled to qualified immunity on Claims 11 and 12.

**H. Scope of Recoverable Relief**

The parties have not addressed whether Mr. Blevins may recover the specific injunctive relief requested in his Third Amended Complaint. However, the Court observes that several of Mr. Blevins' requests for injunctive relief are tied to claims which have been dismissed. For instance, he seeks amendment of the administrative regulations governing inmate property, imposition of the requirement that inmates be advised about property issues during administrative segregation hearings, and an injunction requiring CDOC to allow inmates to possess property and buy canteen items while in administrative segregation unless there is a legitimate security issue.

Because all of Mr. Blevins' claims relating to the possession of personal property by inmates are dismissed, this relief is no longer available to him in this case.

Thus, Mr. Blevins is left with: (1) his prayer for punitive damages against Mr. Barr, Mr. Martinez, Mr. Davidson, Ms. Gail, John Doe and Jane Doe, in their individual capacities; (2) his request that the second administrative segregation determination be expunged from his record; and (3) his request for a court-ordered apology.[14]

**IT IS THEREFORE ORDERED** that:

(1)    The motions to dismiss **(#80, #107, #113)** are **GRANTED IN PART** and **DENIED IN PART**.  Claims 1, 2, 3, 9 and 10 are dismissed.

(2)    The sole claims remaining are:

**Claim 4:** Mr. Reid, Ms. Lindsey, Ms. Slack, and Mr. Misel violated Mr. Blevins' right to due process when they reassigned him to administrative segregation in June 2005, by erroneously classifying him as a member of an STG.

**Claim 5:** Mr. Reid violated Mr. Blevins' right to due process in October 2005 when he conducted a warden review hearing without advance notice, considered Mr. Blevins' attitude in determining whether to remove him from administrative segregation, and failed to advise Mr. Blevins in writing of the outcome of the review.

**Claim 6:** Mr. Reid and Mr. Martinez violated Mr. Blevins' right to due process when they did not notify him of a second warden hearing which occurred in December 2006 or January 2007, nor of the resulting decision.

**Claim 7:** Mr. Barr, Mr. Martinez, Mr. Davidson, Ms. Gail, John Doe and Jane Doe violated Mr. Blevins' right to due process because they did not give him advance notification of the July 2007 pro-unit review hearing.

**Claim 8:** Mr. Barr, John Doe, Mr. Davidson, Mr. Martinez, Ms. Gail, and Jane Doe violated Mr. Blevins' right to due process because they based their August

---

[14] The Court does not opine, at this juncture, whether a court-ordered apology is an available remedy.

2007 decision to revoke his assignment to the pro-unit upon what he wrote in his essays, and denied him an opportunity to defend his essays at the hearing.

**Claim 11:** Mr. Barr and Mr. Martinez retaliated against Mr. Blevins when they decided not to move him to the pro-unit because he was suing Mr. Reid over his placement.

**Claim 12:** Mr. Barr, John Doe, Mr. Davidson, Mr. Martinez, Ms. Gail, and Jane Doe retaliated against Mr. Blevins when, in August 2007, they decided to deny him a transfer into the pro-review unit, and to keep him at the Colorado State Penitentiary, because he had commenced a lawsuit against Mr. Reid over his placement, and because of the contents of an essay he wrote.

(3)     Mr. Blevins is barred from recovering compensatory relief on these claims.

Claims 4, 5, 6, and 7 are limited to the recovery of injunctive relief.  Claims 8, 11 and 12 are

limited to the recovery of injunctive relief and punitive damages.

Dated this 12th day of June, 2008

BY THE COURT:

_____
Marcia S. Krieger
United States District Judge